UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERTA GONCALVES AS ADMINISTRATRIX ) <br> OF THE ESTATE OF ASHLEY MARIE ) <br> GONCALVES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FORD MOTOR COMPANY, ) <br> ) <br> Defendant. ) <br> _____ ) | C.A. NO. 3:01CV2094 (MRK) <br><br><br> FEBRUARY 20, 2004 |

## DEFENDANT FORD MOTOR COMPANY'S
## MOTION TO STRIKE PLAINTIFF'S TRIAL EXHIBITS

Ford Motor Company (hereinafter "Ford") hereby moves to strike from Plaintiff's trial exhibit list the Case Research International, Inc. investigative report, the Frontline/PBS "Hidden History of SUV" videotape, and unidentified Ford internal documents described as a "comparison of laminated to tempered glass document listing." In support of this motion, Ford states as follows:

**I.    INTRODUCTION**

On January 19, 2004 the parties in the above-entitled action filed their joint pretrial memorandum, which included trial exhibit lists provided by both parties. In that memorandum, Ford objected to three (3) of Plaintiff's proposed trial exhibits. Specifically, Ford objected to exhibits which Plaintiff described as: a Case Research International, Inc. "investigative report," a Frontline/PBS "Hidden History of SUV" videotape, and unidentified Ford internal documents constituting a "comparison of laminated to tempered glass document listing." At the status conference on January 21,

2004 this Court requested that Ford provide a brief outlining its argument and authority for its objections to these three exhibits. Ford submits this motion in compliance with this Court's request.

## II.  CASE RESEARCH INTERNATIONAL INVESTIGATIVE REPORT

Plaintiff identified as a trial exhibit an "investigative" report from Case Research International, Inc. Ford has not had an opportunity to review this exhibit and determine its contents, but based on the description provided by Plaintiff objects to its admission at trial. Such a report is inadmissible hearsay pursuant to Federal Rules of Evidence 801 and 802, and does not fall within the business records exception to Federal Rule of Evidence 803(6). See Fed. R. Evid. 801-803. It was almost certainly prepared well after this accident occurred and in anticipation of litigation, and as does not fall within any of the recognized exceptions to the bar on hearsay evidence. See Wells v. Boston Avenue Realty, 125 F.3d 1335, 1340 (10th Cir. 1997). In addition, such a report is likely to be highly prejudicial to Ford, and as such any probative value it might have is outweighed by the likelihood of prejudice. See Fed. R. Evid. 403. Therefore, Ford respectfully requests that this Court prohibit Plaintiff from offering this report as an exhibit at trial of this action.

## III.  PBS/FRONTLINE VIDEOTAPE

Plaintiff additionally has identified a videotape of a segment on PBS's "Frontline" television series entitled "Hidden History of SUV." Sport utility vehicles and their design, testing, rollover accidents and societal value have been the subject of various print articles, news stories and investigative reports in recent years. However, such

media coverage is hearsay and is completely irrelevant to the instant case, and its admission would be highly prejudicial to Ford.

Media reports are generally inadmissible hearsay when offered to prove the truth of the matter asserted in the report. Under Federal Rule of Evidence 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay evidence is inadmissible unless it falls under one of the recognized exceptions, which media reports do not. See Fed. R. Evid. 802-803. It is "a well settled rule of evidence" in Connecticut that newspaper reports constitute inadmissible hearsay. See Cherniske v. Jajer, 370 A.2d 981 (Conn. 1976) (citing 55 A.L.R.3d 663: 'Admissibility of Newspaper Article as Evidence of the Truth of the Facts Stated Therein'); see also Tyson v. Willauer, 290 F.Supp.2d 278, 287 n5 (D.Conn. 2003) (newspaper articles proffered to show truth of matters asserted therein excluded as hearsay under Fed. R. Evid. 801(c).)

Like newspaper articles which have long been recognized as inadmissible, a videotaped piece of "investigative journalism" is also inadmissible hearsay under the Federal Rules. See Borroto v. Campbell, 2002 WL 65523 (N.D. Tex. 2002)[1] (statements made in "Frontline" broadcast were "classic hearsay" and did not fall within any exceptions recognized in Federal Rules of Evidence); see also U.S. v. Hatchett, 918 F.2d 631, 641-42 (6th Cir. 1990) ("60 minutes" videotaped segment properly excluded as hearsay where offered to prove truth of matter asserted therein); Kallstrom v. City of Columbus, 165 F. Supp. 2d 686 (S.D. Ohio 2001) (ABC News "20/20" transcript excluded where used to prove truth of matter asserted therein.) If this videotape is

---

[1]   A copy of this opinion is attached hereto as Exhibit A.

3

admitted at trial, Ford would have no opportunity to cross-examine the declarants shown in the videotape as to the accuracy of their statements, reports, or studies. In addition, Ford would have no opportunity to challenge the editorializing and generalized comments made by the reporters or commentators shown in the videotape. Comments and statements made in such a report are apt to contain unsubstantiated opinions and unwarranted speculation from persons whose reliability or accuracy cannot be assessed or assured. Because the hearsay rule is designed to prevent the introduction of exactly this type of unreliable evidence, this videotape should be excluded.

Television programs such as the one Plaintiff wishes to admit into evidence contain indirect and unreliable assertions of often unidentified writers and authors who are reporting statements or studies made by others. Therefore, the introduction of this videotape at trial would constitute double-hearsay, or multiple layers of out of court statements offered to prove the truth of matters asserted therein. Hence, this Court should bar admission of the videotape as it would serve no purpose other than to prove the truth of the matter asserted therein, and thus constitutes hearsay not fitting any recognized exception allowing admission.

Even assuming arguendo that a videotaped program about Ford Explorers, other sport utility vehicles, or sport utility vehicle rollovers would qualify under one or more of the hearsay exceptions, which Ford expressly denies, the videotape should be excluded because its probative value is substantially outweighed by the likelihood of dangerous and unfair prejudice to Ford. See Fed. R. Evid. 403. In addition, admission of the videotape would only serve to confuse and mislead the jury's sympathies and distract

them from focusing on important and well-supported facts at issue in this case. See id. Thus, Ford respectfully requests that this Court exclude the videotape in its entirety.

### IV. FORD INTERNAL DOCUMENTS COMPARING LAMINATED AND TEMPERED GLASS

Finally, Plaintiff has identified a collection of documents of unknown quantity, origin or contents that are purportedly "internal documents" from Ford comparing laminated and tempered glass. Ford has not seen the physical documents identified in Plaintiff's exhibit list, and thus with such limited information provided in the pretrial memorandum Ford can only guess at what might be contained within this class of potential exhibits. As part of its pretrial memorandum, Ford identified nearly 300 specific documents that it intends to introduce at trial. Each has been identified with as much specificity as possible in order to allow Plaintiff the opportunity to locate the document and determine if she wishes to object to its admissibility. From the meager information provided in Plaintiff's trial exhibit list, however, Ford cannot even determine if this "Ford Internal Documents" exhibit described as a "comparison" is an internal document created by an employee or agent of Ford, or if it is a document prepared by outside parties comparing tempered and laminated glass based on information contained in documents prepared by Ford. Ford does not know if it produced these documents to Plaintiff in discovery, if Plaintiff created these documents, or if Plaintiff obtained them through some other means. As such, Ford can make no determination or argument as to whether such documents are inadmissible under the Federal Rules of Evidence, including Rules 403 and 801-803.

Ford requests that this Court bar Plaintiff from admitting the "internal Ford documents" as exhibits at trial of this matter, unless Plaintiff immediately produces

copies of all documents contained within this exhibit to both Ford and this Court, in order to allow all parties to assess the admissibility of those documents at trial. If Plaintiff does not expeditiously produce such documents for review, Ford respectfully requests that this Court prohibit Plaintiff from introducing **any** documents produced, created or maintained by Ford at trial.

## V.    CONCLUSION

In light of the foregoing, Ford respectfully requests that this Court sustain Ford's objections to certain items on Plaintiff's exhibit list and prohibit admission of such documents as exhibits at trial.

DEFENDANT

FORD MOTOR COMPANY

By its attorneys,

James M. Campbell (ct 09276)
Mark J. Hoover (ct 15546)
Campbell Campbell Edwards & Conroy
Two Riverview Square
East Hartford, CT  06108
(860)291-8419

## CERTIFICATE OF SERVICE

I, Mark J. Hoover, hereby certify that a true copy of the above document was served upon the attorney for all parties by mail on February 20, 2004.

Mark J. Hoover

# EXHIBIT A

Not Reported in F.Supp.2d    Page 1
(Cite as: 2002 WL 655523 (N.D.Tex.))

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

Enrique Manzano BORROTO Plaintiff
v.
Kevin CAMPBELL, and City of Dallas, Texas Defendants
Enrique Manzano BORROTO, Plaintiff,
v.
James R. WILSON, et al., Defendants.

No. Civ.A. 3:92CV2102-H.

April 18, 2002.

*ORDER*

SANDERS, Senior J.

*1 Before the Court are the Findings, Conclusions and Recommendation of the United States Magistrate Judge, filed December 17, 2001; Defendant Campbell's Objection thereto, filed January 2, 2002; Defendant Campbell's Motion to Reconsider, filed February 7, 2002; and Plaintiff's Response to Defendant Campbell's Motion (Objection), filed March 4, 2002.

The Court has made the required independent review of the pleadings, files, and records in this case; the Findings and Conclusions of the Magistrate Judge and Defendant's Objections. Having done so, the Court is of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are ADOPTED as the Findings and Conclusions of the Court, and Defendant Campbell's Objections are OVERRULED.

Judgment will be entered accordingly.

SO ORDERED.

*FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

BOYLE, Magistrate J.

Pursuant to the District Court's Order Referring Case, filed April 22, 1999, Defendant Kevin Campbell's Motion for Summary Judgment, filed February 23, 2001, and Defendant City of Dallas' Second Motion for Summary Judgment, filed February 27, 2001, have been referred to this Court for recommendation. Having reviewed the pertinent pleadings and evidence, the Court recommends that Defendant Campbell's motion be DENIED and Defendant City of Dallas' motion be GRANTED for the reasons that follow.

I. Background

Plaintiff Enrique Manzano Borroto ("Borroto") filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by two Dallas Police Department officers during his arrest for possession of cocaine in October 1991. Borroto alleges that the officers used excessive force in violation of his Fourth Amendment rights.

A. Factual Background

On October 14, 1991, Officers James R. Wilson and Kevin Campbell were patrolling the 1700 block of North Hall Street in Dallas, a known drug trafficking area, when they spotted Borroto behind a trash dumpster. (Campbell App. at 1.) According to Borroto, he was alone behind the trash dumpster and had just finished urinating when the officers spotted him. (Pl.'s App. to Resp. to Campbell's Mot. for Summ. J. ("Pl.'s App.") at 4-5.) According to Campbell, Borroto was with an unidentified man and was holding a brown paper sack. (Campbell App. at 2.) Campbell contends that when Wilson shined his flashlight on the two men, Borroto threw the sack to the ground and the men began walking away from the officers. (*Id.*) Although Wilson ordered Borroto to stop, Borroto continued walking. (*Id.;* Pl.'s App. at 6-7.) When Borroto allegedly reached into his pockets, the officers feared that he had a weapon and pushed him to the ground. (Campbell App. at 2.) Borroto contends that the officers struck him in the back of the neck, kicked him in the legs and slammed him face-down against the ground. (Pl.'s App. at 7.) Borroto also claims that Campbell pressed his knees into Borroto's back and neck, pinning him to the ground for approximately ten minutes. (*Id.*) According to Campbell, once Borroto was handcuffed, Wilson retrieved the brown paper sack that Borroto had thrown to the ground and found marijuana and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 2

cocaine inside the sack. (Campbell's App. at 2.) The officers then arrested Borroto and transported him to the Lew Sterrett Jail. (*Id.*) Borroto denies ever touching or possessing the brown paper sack of drugs. (Pl.'s App. at 20-21.)

*2 Borroto claims that, as a result of the officers' actions, he was bleeding and in "great pain." (*Id.* at 7.) He also claims that, despite his requests for immediate medical attention, he was not allowed to visit the jail nurse until several hours after his arrest. (*Id.* at 8.) Campbell contends that he observed only a small abrasion on Borroto's knee and elbow, and that he took Borroto to the nurse after they arrived at the jail. (Campbell's App. at 2.)

Borroto is currently serving a 25-year sentence in the Texas Department of Corrections for possession with intent to deliver a controlled substance.

B. Procedural Background

Borroto filed this § 1983 lawsuit against Wilson, Campbell and the Dallas Police Department ("DPD") on October 9, 1992. On November 4, 1992, the District Court ordered that Borroto's complaint be construed as a writ of habeas corpus and that judgment be entered dismissing the case for failure to exhaust state remedies. Borroto appealed and the Fifth Circuit vacated the judgment on March 18, 1993. The Fifth Circuit remanded the case for further proceedings regarding Borroto's excessive force claims only.

On December 21, 1993, the District Court issued summons for Wilson, Campbell and the DPD. Campbell and the DPD filed answers. Wilson, who had moved out-of-state, did not file an answer.

On June 7, 1994, Borroto moved for leave to amend his complaint and replace the DPD with the City of Dallas ("City") as a defendant in this case. The District Court granted Borroto's motion and Borroto filed an amended complaint on September 9, 1994. Thereafter, the District Court ordered the U.S. Marshals Service to serve summons and the amended complaint on all defendants. The City was served but the summons for Wilson and Campbell were returned unexecuted. During this time, Borroto filed a motion for appointment of counsel, which was denied. Borroto also filed various discovery requests and requests for issuance of subpoenas, which were also denied. The District Court subsequently dismissed Wilson and Campbell as defendants and entered a no-evidence summary judgment in favor of the City on May 12, 1996.

On appeal, the District Court's judgment was affirmed in part and reversed and remanded in part. The Fifth Circuit affirmed the District Court's dismissal of Wilson as a party and its denial of Borroto's request for appointment of counsel. However, the Fifth Circuit reversed the District Court's dismissal of Campbell as a party and its entry of summary judgment in the City's favor. With respect to Campbell, the Fifth Circuit found that Borroto's failure to serve him with the amended complaint was not prejudicial because he had been properly served with the original complaint and the amended complaint did not add any new claims against him. Thus, the Fifth Circuit concluded that the District Court "abused its discretion by imposing the harsh sanction of Campbell's dismissal." With respect to the City, the Fifth Circuit found that it was "unfair and illogical to ... state that Borroto did not have enough evidence to survive summary judgment when the court's [denial of his discovery requests], coupled with his status as a [*pro se*] prisoner, made it rather difficult for him to conduct an investigation." Accordingly, on March 16, 1998, the Fifth Circuit reversed and remanded the case for trial on the excessive force claims against Campbell and the City.

*3 On remand, the District Court referred the case to this Court for determination. On February 23, 2001, Campbell filed a motion for summary judgment and the City filed a motion for leave to file a second motion for summary judgment. The Court granted the City's motion for leave and simultaneously appointed counsel for Borroto on February 27, 2001. Borroto's counsel filed an "emergency" motion to reopen and compel discovery under Rule 56(f). The Court granted Borroto's motion, requiring the City to produce documents regarding officer training on the use of force and complaints made against DPD officers for physical assault and excessive force. [FN1] The Court also required the City to present a witness to testify on such matters. [FN2] The Court ordered that Borroto's opposition to Defendants' summary judgment motions would be due no later than 15 days after Borroto's receipt or inspection of the documents or the completion of the City's deposition, whichever occurred later.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 3

FN1. The Court ordered the City to produce documents responsive to the following five categories: (1) documents evidencing the training of Dallas police officers with regard to the use of force and/or arrest procedures for the five-year period before each of the arresting officers received such training; (2) documents evidencing complaints and/or lawsuits against Dallas police officers for assault and/or excessive force in arrests in drug related cases for the five-year period before Borroto's arrest; (3) documents evidencing the "Dallas Police Department's guidelines regarding levels of force and the force continuum" referred to in the brief in support of the City's second summary judgment motion; (4) documents evidencing any complaints of excessive force or assault against arresting officer James Wilson, Jr.; and (5) documents evidencing Officers Wilson's and Campbell's training with regard to the use of force and/or arrest procedures.

FN2. The Court ordered the City to present a witness to testify on the following three topics: (1) the training of DPD officers with regard to the use of force and/or arrest procedures for the five-year period before each of the arresting officers received such training; (2) complaints and/or lawsuits against DPD officers for assault and/or excessive force for the five-year period before Borroto's arrest; and (3) the "Dallas Police Department's guidelines regarding levels of force and the force continuum" referred to in the brief in support of the City's second summary judgment motion.

On September 5, 2001, the Court held a telephonic hearing regarding the status of the court-ordered discovery. During the hearing, the Court ordered the City to produce certain, specific documents regarding DPD officer training and testing. The Court also required the City to submit an affidavit from a DPD representative regarding the DPD's record-keeping system for complaints of physical assault and excessive force in drug-related cases for the five-year period before Borroto's arrest. The affidavit was required to state whether someone had searched the DPD's records for such complaints and, if so, what the results were. The Court ordered that the affidavit be filed by September 14, 2001, and that Borroto's opposition to Defendants' summary judgment motions be filed by October 1, 2001.

The City timely filed the required affidavit, which explained the DPD's record-keeping system and identified one internal affairs complaint, the "Hoops Complaint," that was responsive to Borroto's request. Thereafter, Borroto timely filed his opposition to Defendants' summary judgment motions. The issues have been briefed by the parties and this matter is ripe for determination.

II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5 superth Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5 superth Cir.1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little,* 37 F.3d at 1075.

*4 Once the movant meets its burden, the non-movant must show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 4

for trial." ' *Matsushita,* 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v.. Orr,* 200 F.3d 291, 302 (5 superth Cir.2000); *Anderson,* 477 U.S. at 248.

III. Analysis

A. Campbell

Borroto brings this action against Campbell under § 1983, [FN3] alleging that Campbell used excessive force against him during his arrest on October 14, 1991, in violation of his Fourth Amendment rights under the United States Constitution. Campbell moves for summary judgment on the basis that Borroto has not alleged sufficient facts to overcome Campbell's qualified immunity defense.

> FN3. Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

1. Qualified Immunity Standard

Qualified immunity shields government officials performing discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A police officer in the process of arresting a suspect, such as Campbell, is acting within his discretionary authority as a law enforcement official, and thus is shielded from liability by he defense of qualified immunity. *See Trejo v. Perez,* 693 F.2d 482, 487 n. 9 (5 superth Cir.1982). Borroto, as the plaintiff, bears the burden of negating Campbell's defense of qualified immunity. *Foster v. City of Lake Jackson,* 28 F.3d 425, 428 (5 superth Cir.1994).

In *Seigert v. Gilley,* 500 U.S. 226 (1991), the United States Supreme Court set forth the analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity. As a threshold matter, the court must first determine whether the plaintiff has alleged a violation of a clearly established constitutional right. *Seigert,* 500 U.S. at 231-232. If the plaintiff is successful, the court must then determine whether the defendant's conduct was objectively reasonable in light of the "clearly established" law at the time of the alleged violation. *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993); *see also Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

2. Excessive Force Claim/Fourth Amendment Violation

*5 All claims that a law enforcement officer used excessive force in the course of an arrest are analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). The elements of the claim are (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. *See Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992) (overruling "significant injury" requirement in Eighth Amendment excessive force context); *cf. Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (per curiam) (establishing three-prong test for excessive force claims brought by arrestee, and requiring "significant injury"); *see Knight v. Caldwell,* 970 F.2d 1430, 1432 (5th Cir.1992) (recognizing that *Hudson* overruled Fifth Circuit law requiring significant injury for excessive force claim).

The amount of injury necessary to satisfy the Fifth Circuit's requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Ikerd v. Blair,* 101 F.3d 430, 434-35 (5 superth Cir.1996); *see Gomez v. Chandler,* 163 F.3d 921, 923 (5 superth Cir.1999) (explaining that "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" has played an important role in determining

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 5

whether an injury is more then *de minimis* ). Therefore, the injury must be more than a *de minimis* injury, evaluated in the context in which the force was deployed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5 superth Cir.2001).

Here, Borroto claims that the abrasions, bleeding and bruises he suffered as a result of Campbell's actions constitute more than a *de minimis* injury because Campbell had no legal justification for using any force whatsoever against him on October 14, 1991. Borroto contends that his conduct-urinating behind a trash dumpster and walking away slowly-did not warrant the use of force against him . [FN4] Campbell, however, contends that the use of force against Borroto was reasonably necessary because Borroto appeared to be reaching for a weapon while fleeing from an illegal drug transaction. Due to this discrepancy between the parties' versions of the events leading up to the arrest, the Court finds there are genuine issues of material fact regarding the extent of Borroto's injuries and whether Campbell's use of force was excessive to the apparent need for it. This is so because the excessive force claim likely will turn on whether Borroto was engaging in suspected illegal activity behind the trash dumpster and appeared to be reaching for a weapon when the officers ordered him to stop. Accordingly, the Court finds that summary judgment on Borroto's claim against Campbell for excessive force should be denied.

>FN4. Defendant City of Dallas objects to Borroto's use of the Second Amended Complaint ("Complaint") as summary judgment evidence. (City's Reply at 4.) The Court overrules the objection because Borroto's Complaint was verified as true and correct under penalty of perjury and, as such, may be considered as competent summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5 superth Cir.1994) ("A plaintiff's verified complaint can be considered as summary judgment evidence to the extent it comports with the requirements of Fed.R.Civ.P. 56(e).") (citing *Baker v. Nonnan*, 651 F.2d 1107, 1114-15 (5 superth Cir.1981)). The Court also overrules the City's broad objection that the Complaint contains inadmissible **hearsay** and conclusions. If the City has an objection to a particular statement contained in the Complaint, then it should so state. It is not the Court's job to sift through all of the allegations of the verified Complaint to determine which statements are competent summary judgment evidence.

B. City of Dallas

*6 Borroto also brings a § 1983 claim against the City of Dallas, alleging that the City engaged in a policy or custom of failing to adequately train its police officers, which led to Campbell's use of excessive force against Borroto in violation of Borroto's Fourth Amendment rights. The City moves for summary judgment on the basis that Borroto cannot point to any evidence of a municipal policy or custom that caused the constitutional injury alleged.

1. Rule 56(f)

Borroto initially responds to the City's summary judgment motion by asking the Court to deny summary judgment pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) states that "should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had...." Fed. R. Civ. P. 56(f). "The Rule is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions." *Owens v. Estate of Erwin*, 968 F.Supp. 320, 322 (N.D.Tex.1997).

To comply with Rule 56(f), the party opposing summary judgment must file the specified non-evidentiary affidavit, explaining why he cannot oppose the summary judgment motion on the merits. *Id.* The party must demonstrate why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. *Krim v. Banc Texas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993). "A 'bare assertion' that the evidence supporting the plaintiff's allegation is in the hands of the defendant is insufficient to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 6

justify a denial of a motion for summary judgment under Rule 56(f)." *Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1030 (5 superth Cir.1983) (citing *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981)).

In the present case, the City's motion is not premature. This case has been pending since 1992. Over the years, Borroto has served, and the City has responded to, several sets of discovery requests. Furthermore, in May 2001, the Court reopened discovery to allow Borroto an opportunity to gather additional evidence *for the very purpose of responding to the City's summary judgment motion.* At that time, the Court ordered the City to produce certain documents evidencing DPD training procedures and excessive force complaints. Several months later, in September 2001, the Court again ordered the production of certain documents and required the City to provide an affidavit regarding the DPD's record retention policy regarding complaints of excessive force. Because adequate time and opportunity for discovery has been allowed in this case, Rule 56(f) relief is not warranted.

Moreover, the Court finds that Borroto's non-evidentiary affidavit does not meet the requirements of Rule 56(f) because it does not adequately explain why Borroto cannot oppose the City's motion on the merits. Although the affidavit identifies three types of documents the City did not produce, it does not explain how such proof might create a genuine issue of material fact. Accordingly, Borroto's request for relief under Rule 56(f) should be denied. The Court will now turn to the merits of Borroto's claim against the City.

2. Municipal Liability

*7 A city may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, (1978). A city cannot be liable under § 1983, however, merely because it employed a tortfeasor. *Id.* at 694; *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995). According to the Supreme Court, "[t]he 'official policy' requirement ... make[s] [it] clear that municipality liability [under § 1983] is limited to action for which the municipality is actually responsible ... -that is, acts which the municipality has officially sanctioned or ordered ." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, (1986). The policy or custom must be "the moving force of the constitutional violation." *Palmer v. City of San Antonio*, 810 F .2d 514, 516 (5 superth Cir.1987) (quoting *Monell*, 436 U.S. at 694). Although Borroto has identified no official *written* policy regarding his § 1983 claim, such a policy may nevertheless exist in the form of an unwritten custom. The custom or policy must actually be that of the City's governing body before the City can be held liable. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc).

A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir.1989) (citations omitted); *see also Palmer*, 810 F.2d at 516 . "[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483-84).

The Fifth Circuit defines "official policy" as:
1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.
*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd in relevant part*, 739 F.2d 993 (5th Cir.1984) (en banc); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (citing *Bennett*, 735 F.2d at 862).

*8 Borroto contends that the City is liable for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 7

Wilson and Campbell's conduct because it engaged in a policy or custom of failing to adequately train its police officers, which led to the officers' use of excessive force against him. The undisputed summary judgment evidence shows that the Dallas City Council is the City's policy maker on police issues. (City's App. at 4-12.) Borroto, however, fails to adduce evidence that the City Council deliberately chose an inadequate training program. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985) ("[I]t is ... difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice-that is, proof that the policymakers deliberately chose a training program which would prove inadequate."); *see also Harris,* 489 U.S. at 388 ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Palmer,* 810 F.2d at 516. [FN5] Thus, to survive summary judgment, Borroto must point to evidence of persistent, repeated, and constant violations of constitutional rights by virtue of the City's alleged failure to adequately train its police officers. *See Wassum v. City of Bellaire,* 861 F.2d 453, 455 (5th Cir.1988) (quoting *Languirand v. Hayden,* 717 F.2d 220, 227-28 (5th Cir.1983)).

FN5. The fact that Campbell was instructed to enforce "all penal laws and city codes with zero tolerance" is not evidence of an official policy or custom of inadequate training, absent some showing that "zero tolerance" actually meant "excessive force" (or commonly resulted in the use of excessive force) and that the City Council condoned such directive.
Moreover, the Court rejects Borroto's argument that certain comments in a DPD lesson plan support a finding of deliberate indifference. The lesson plan addresses the DPD's "7-point force continuum" and explains when the escalation of force is appropriate. An introductory comment that the purpose of the 7-point force continuum is "CYA" (Pl.'s App. to Resp. to City's 2d Mot. for Summ. J. ("Pl.'s App. II") at 67), while crass, does not evidence a disregard for the rights of potential arrestees. Rather, it shows that the DPD is aware that officers must have specific, identifiable reasons to justify the escalation of force. Similarly, the statement that the public perceives law enforcement as "fun" because television focuses on the physical confrontations between the police and arrestees (*Id.* at 69), does not encourage the use of force. This is evident from the statements that immediately follow: "Actually, 97% of our job is spent on these first 4 levels of the response continuum [which only involve verbal control]. The better we are at these [4 levels], the less we'll have to escalate our responses." (*Id.*) The Court concludes that a reasonable jury could not find that these comments support a finding of deliberate indifference.

In an attempt to show persistent, repeated and constant violations, Borroto points to a "Frontline" television news segment entitled "The Dallas Drug War," which aired in 1989 and reported that "there were over 1,000 complaints of excessive force and harassment lodged against the Dallas Police Department in 1988 alone." (Pl.'s App. to Resp. to City's 2d Mot. for Summ. J. ("Pl.'s App. II") at 26.) Borroto relies on this statement and others made during the broadcast concerning the DPD's use of force against minorities. The City, however, argues that such evidence is **hearsay** and, therefore, inadmissible. The Court agrees.

Federal Rule of Civil Procedure 56(e) requires testimony in support of or in opposition to summary judgment to be made on personal knowledge "set[ting] forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). **Hearsay** statements are not admissible unless covered by an exception under the Federal Rules of Evidence. Fed.R.Evid. 802. A statement is **hearsay** if: (1) it is made by someone other than the declarant while testifying at trial or a hearing; and (2) is offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). The statements made during the **Frontline** broadcast concerning the DPD's use of force against minorities is classic **hearsay** and does not fall within any of the exceptions provided by the Federal Rules of Evidence. *See United States v. Hatchett,* 918 F.2d 631, 641-42 (6 superth Cir.1990) (district court properly excluded videotaped segment from a "60 Minutes" television broadcast

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 655523 (N.D.Tex.))

Page 8

that focused on the collection techniques of a local IRS office as **hearsay** where such evidence was being offered to show that IRS agents used oppressive collections tactics); *Kallstrom v. City of Columbus,* 165 F.Supp.2d 686, 692-93 (S.D.Ohio 2001) (court struck plaintiff's quotes from various news stories, including quotes from an ABC News 20/20 transcript, as **hearsay** where used to prove the truth of the matter asserted therein). Accordingly, the Court finds that such evidence is inadmissible. [FN6]

> FN6. The statements made in the Chicago Sun-Times article about the **Frontline** segment are likewise inadmissible for the same reason that they are **hearsay**.

*9 Borroto also points to evidence that a congressional hearing was held in Dallas in 1987, at the request of the Dallas City Council, to air "tensions" between the minority community and the DPD. (Pl.'s App. II at 110-11.) There is no evidence in the record, however, that such "tensions" resulted from the DPD's repeated use of excessive force against minorities or that excessive force complaints were even discussed at the hearing. Further, the fact that tensions existed between the DPD and the minority community in 1987 has questionable relevance to events that occurred some four years later. Without more, this evidence is insufficient to support a finding of a persistent, widespread practice of failure to adequately train.

The only remaining evidence to which Borroto points is a complaint filed by Michael Ray Conner against DPD Officer R.W. Hoop, alleging use of excessive force during Connor's arrest on March 19, 1988. (Pl.'s App. at 43-54.) Connor complained that Hoop struck him in the head with a flashlight, causing a head laceration. (*Id.* at 43-45.) After conducting an internal affairs investigation, the DPD sustained Conner's complaint. (*Id.* at 47-53.) Evidence of Connor's incident in 1988 and Borroto's incident in 1991, however, does not establish a persistent, widespread practice of constitutional violations.

In sum, the Court concludes that Borroto has failed to adduce any evidence that would allow a reasonable jury to find that the City had a deliberate policy or custom of failing to adequately train its officers. The Court also concludes that Borroto has failed to point to any evidence of persistent, repeated, and constant violations of constitutional rights. Because Borroto has failed to direct the Court's attention to evidence in the record showing that the City engaged in a policy or custom of failing to adequately train its officers, an issue on which he will have the burden of proof at trial, the City's motion for summary judgment on Borroto's excessive force claim should be granted.

IV. Conclusion

For the foregoing reasons, the Court recommends that Campbell's motion for summary judgment be DENIED and the City of Dallas' motion for summary judgment be GRANTED.

*INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT*

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them by Certified Mail, Return Receipt Requested. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court, except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5 superth Cir.1996) (en banc).

2002 WL 655523 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works