UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERTA GONCALVES AS ADMINISTRATRIX ) <br> OF THE ESTATE OF ASHLEY MARIE ) <br> GONCALVES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FORD MOTOR COMPANY, ) <br> ) <br> Defendant. ) <br> _____) | C.A. NO. 3:01CV2094 (MRK) <br><br><br> MARCH 3, 2004 |

**DEFENDANT FORD MOTOR COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S TRIAL EXHIBITS**

Defendant Ford Motor Company (hereinafter "Ford") hereby opposes Plaintiff's Motion to Strike Defendant's Trial Exhibits and as grounds therefore states as follows:

**I.      INTRODUCTION**

On October 29, 2003, this Court issued a Scheduling Order instructing the parties to submit a Joint Trial Memorandum. The Scheduling Order incorporated explicit instructions on the preparation of the memorandum, to which each party was to append all pretrial filings, including exhibit lists. The Scheduling Order specifically instructed that each party must include in the Joint Trial Memorandum all objections to the other's proposed exhibits. The Order included the following: **"all listed exhibits shall be deemed admissible unless there is an explicit objection stated to an exhibit."** See Scheduling Order, paragraph 8(b). (emphasis contained in original)

The parties exchanged exhibit lists prior to the finalization of the Joint Trial Memorandum, and Ford included in the final memorandum objections to three (3) of Plaintiff's exhibits. Ford asked counsel for Plaintiff if Plaintiff wished to object to any of

Ford's identified exhibits, but Plaintiff chose not to do so. The parties filed their Joint Trial Memorandum with this Court on January 19, 2004. Neither party has amended or supplemented that memorandum at any time.

On January 21, 2004, this Court held a telephonic status conference with both parties. During that conference, the Court ordered the parties to submit briefing on all objections to exhibits by February 20, 2004. At that point, while Ford's objections to three of Plaintiff's exhibits were pending, Plaintiff had not yet objected to a single Ford exhibit. Plaintiff did not submit objections to any Ford exhibit during the status conference, nor at **any** time between the January 21, 2004 status conference and the date of filing the Motion to Strike Defendant's Trial Exhibits (hereinafter "Motion to Strike"). Plaintiff provides no explanation for the 5 week delay in filing its objections to Defendant's exhibits, though Plaintiff does state that the February 20, 2004 **briefing deadline** was overlooked because Plaintiff's counsel was involved in a jury trial. See Plaintiff's Motion for Extension of Time to Object to Evidence and Witnesses Set Forth by the Defendant (hereinafter "Motion for Extension of Time") at p. 1.

Because Plaintiff has failed to comply with this court's clear and unmistakable instructions and deadlines for objections to exhibits and briefing on objections, and has provided no reasonable basis for failing to adhere to the Court's instructions or deadlines, Ford respectfully requests that this Court deny Plaintiff's Motion to Strike, and deem all of Ford's trial exhibits identified in the Joint Trial Memorandum as admitted at trial.

## II.    ARGUMENT

### A.    Plaintiff's Motion To Strike Should be Denied Because It Is Untimely.

Plaintiff now requests, for the first time, that this Court exclude certain of Ford's proposed trial exhibits. Plaintiff has waived its right to object to such exhibits by failing to submit objections as part of the Joint Trial Memorandum. Plaintiff had ample notice of the documents that Ford intended to submit as exhibits at trial, but failed to take any action to object to these exhibits until this late date. While Plaintiff has provided an explanation (albeit one that Ford does not accept) to failing to provide a brief on the objections by the February 20th deadline, neither the Motion for Extension of Time nor the Motion to Strike provide any explanation for the one month delay in objecting to Ford's exhibits.

Plaintiff has ignored the clear instructions of this Court in failing to submit objections to exhibits as part of the Joint Trial Memorandum. Because the sanction for such failure is clearly stated in the Scheduling Order, Ford respectfully requests that this Court enforce its stated sanction and deny the Motion to Strike in its entirety, and admit Ford's exhibits at trial.

### B.    Plaintiff's Objections Should Be Denied Because They Do Not Conform With This Court's Order on Briefing of Objections.

Plaintiff's Motion to Strike consists of two pages of Exhibits listed by groups of exhibit numbers with a very brief statement of the grounds for objection to each group. Many of the exhibits grouped together by Plaintiff are very dissimilar from one another, and they should not be considered en masse. Several objections are only one word long. None of the plaintiff's objections contain citation to the Federal Rules of Evidence or any legal authority. Thus Plaintiff has not adhered to this Court's request that the parties

3

provide briefs containing relevant legal authority and argument in support of all objections to exhibits.

In addition, Plaintiff's stated grounds for objection in many instances are difficult to understand or respond to in any effective way. For example, Plaintiff objects to Ford's exhibits 520-522, which are insurance records from Allstate Indemnity Company, Holdworth & Associates, and Progressive Northwestern Insurance, respectively, because "[i]nsurance should not be brought into the case, and there is no foundation for the admission." Plaintiff's statement has no legal or factual support, and does not even provide Defendant with enough information to properly refute the objection.

On this Court's February 20, 2004 briefing deadline, Ford filed a 6 page brief on its three objections to Plaintiff's proposed trial exhibits. In that brief Ford outlined the bases for its three objections with both factual and legal support. Plaintiff has given no explanation for its failure to provide Defendant or this court with any more authority than the short "blurb" objections contained within its Motion to Strike. As written, Ford finds it difficult to respond to Plaintiff's objections in a coherent and meaningful way. Plaintiff had ample opportunity to file clearly delineated written objections with full factual and legal support, and Plaintiff has simply failed to do so. Rather than waste judicial resources and precious trial preparation time attempting to make head or tales of Plaintiff's objections, Ford hopes that this Court will reject Plaintiff's Motion to Strike as facially deficient.

    **C.    Plaintiff's Objections Are Wholly Without Merit and Should Be Denied.**

Plaintiff's motion prematurely requests rulings on general types of evidence—including hearsay statements, lay opinions, and documentary evidence—without

4

providing proper factual support, without specifying the particular evidence they seek to exclude, and before the context of trial has indicated the need for and relative probative value of such evidence. Plaintiff thus asks this Court to make evidentiary rulings in a vacuum. In addition, Plaintiff's Motion to Strike lacks any legal support in federal case law or the Federal Rules of Evidence. Out of a list of nearly 300 exhibits proposed by Ford, Plaintiff objects to all but 30. In each instance, Plaintiff's stated grounds for objection, however, are completely unsupported. In fact, there is no reasonable legal basis for excluding such exhibits, and this Court should overrule all of Plaintiff's objections and allow the admission of Ford's proposed trial exhibits in their entirety.

1.   Foundation

Plaintiff objects wholesale to 245 of Ford's proposed trial exhibits on the grounds that they have "no foundation." Motion to Strike, p. 1-2. The specific exhibits that Plaintiff objects to on this basis include: the NAVIS vehicle inquiry for the Ford Explorer at issue in this litigation; insurance records related to the automobiles involved in the subject accident; and a variety of photographs, charts, diagrams, publications, governmental documents and other materials specifically identified in the exhibit list for use at trial. Plaintiff cites no legal authority whatsoever for its contention that Ford must provide foundation for these exhibits prior to trial. On the contrary, Ford understands and intends to comply with the Federal Rules of Evidence's requirement that it provide appropriate foundation **at trial**, through authenticating testimony and procedure, for the admission of these exhibits.

2. <u>Police report</u>

Plaintiff objects to the admission of the Monroe, Connecticut police report, Defendant's Exhibit 501, even though Plaintiff listed the report the first item on her own exhibit list. Plaintiff specifically objects to the conclusion of the officer as to fault and other unidentified "hearsay statements." Motion to Strike, p. 1. Hearsay statements and conclusions contained in police reports are not *per se* inadmissible. Conclusions may be admissible if they are based upon the observations of the investigating officers and are otherwise trustworthy.

The police report falls squarely within the exception to the hearsay rule provided by Federal Rule of Evidence 803(8) for public records and reports. <u>See</u> Fed. R. Evid. 803(8); <u>see also</u> <u>Salsberg v. Modern Transfer Co.</u>, 324 F.2d 737, 738 (2nd Cir. 1963)(police report admissible). Plaintiff has provided no evidence that the police report is untrustworthy in any way. The reporting officer's conclusions as to fault "should be admissible along with other portions of the report," provided "the conclusion is based on a factual investigation and satisfies [Rule 803(8)]'s trustworthiness requirement, it." <u>See</u> <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 170 (1988).

Plaintiff has not clearly identified which statements it alleges constitute inadmissible hearsay, which prevents Ford from effectively demonstrating why those statements are either not hearsay or fall within one of the recognized exceptions. However, to the extent that the Plaintiff referred to statements made by persons expected to testify at trial of this matter, Ford may use their statements, depending on the content of their testimony at trial, as prior consistent or inconsistent statements, present sense

6

impressions, excited utterances, statements of state of mind, or recorded recollection. See Fed. R. Evid. 801(d)(1) and 803(1)-(3) and (5).

    3.    <u>Engineering Drawings, Diagrams and Blueprints</u>

Plaintiff objected to Ford's exhibit #527, listed as "engineering drawings, diagrams, and blueprints" as being improperly described. Therefore, Ford describes this exhibit more specifically as consisting of engineering drawings, diagrams and blueprints of a 1996 Ford Explorer identical to the vehicle that is the subject of this lawsuit.

    4.    <u>Deposition Transcripts</u>

Plaintiff has objected to Ford's exhibits numbered 531-535, which are the depositions of Plaintiff Berta Goncalves, as well as Angelina Maione who was the driver of the vehicle that first impacted the subject Explorer, and depositions of Kevin, Antonio and David Goncalves who were additional occupants in the vehicle at the time of the accident. Ford has designated the transcript of Maione in its entirety in the event that she is unavailable for trial. However, if all five deponents testify at trial Ford anticipates using portions of their deposition for impeachment purposes. Ford is under no obligation to designate specific portions of these transcripts before hearing the testimony from those witnesses that might necessitate use of their depositions for impeachment purposes.

    5.    <u>Curriculum Vitae of Experts for Plaintiff</u>

Plaintiff objects to admission of the curricula vitae of its own experts at trial, on the basis that these curricula vitae "may not be offered" and are cumulative. Plaintiff's explanation that they "may not be offered" is unsupported by any legal authority and is so vague as to make it impossible for Ford to effectively respond. Ford may intend to use the curricula vitae of Plaintiff's experts for impeachment purposes at trial. If offered for

7

impeachment purposes the curricula vitae are appropriate evidence, not cumulative evidence.

6.     Witness Statements

Plaintiff incorrectly contends that all witness statements listed as exhibits are inadmissible hearsay. However, where the statements were made by witnesses who testify at trial, Ford may use their statements, depending on the content of their testimony at trial, as prior consistent or inconsistent statements, present sense impressions, excited utterances, statements of state of mind, or recorded recollection. See Fed. R. Evid. 801(d)(1) and 803(1)-(3) and (5). If the persons making such statements are unavailable to testify at trial within the definition of Federal Rule of Evidence 804, such statements are potentially admissible as statements against interest. See Fed. R. Evid. 804(b)(3). The statements were also admissible as impeachment evidence. See Gallis v. Peelle Co., 264 F.2d 663, 665 (2nd Cir. 1959); see also Gray v. Busch Entertainment Corp., 886 F.2d 14, 16 (2nd Cir. 1989).

7.     Plaintiff's Expert Reports

Plaintiff inexplicably seeks to exclude its own expert reports as hearsay, despite listing them as exhibits on Plaintiff's exhibit list. However, Ford does not seek to admit these reports to prove the truth of the matter asserted therein, and thus they cannot constitute hearsay. See Fed. R. Evid. 801(c). In addition, such reports are admissible as prior inconsistent statements, or to impeach Plaintiff's expert witnesses at trial. See Fed. R. Evid. 801(d)(1).

8

8.  Animation of Accident

Plaintiff objects to Ford's use at trial of an animation of the accident sequence, and of still images from that animation. Many federal courts have allowed the use at trial of computer generated accident animation sequences as evidentiary tools. See, e.g., Hinkle v. City of Clarksburg, 81 F.3d 416, 425 (4th Cir. 1996); Robinson v. Missouri Pacific Railroad Co., 16 F.3d 1083, 1089 (10th Cir. 1994); Thorndike v. DaimlerChrysler Corp., 266 F.Supp. 2d 172, 180 (D. Me. 2003); Datskow v. Teledyne Contintental Motors Aircraft Products, 826 F. Supp. 677, 686 (W.D.N.Y. 1993). Any concern about the possible prejudice of such animations may be alleviated through a limiting instruction to the jury. See Datskow at 685. In addition, Ford invites the Court to view the animation at the May 19, 2004 pretrial conference if this Court deems it necessary to view the animation prior to ruling on its admissibility.[1]

Despite Plaintiff's brief and cursory attempts to justify the exclusion of the vast majority of Ford's exhibit list, as the foregoing demonstrates Plaintiffs arguments are completely without merit. Therefore, Ford asks that this Court deny Plaintiff's Motion to Strike as untimely, not in conformity with this Court's January 21, 2004 order, and lacking in factual or legal support.

## III.  CONCLUSION

For all of the foregoing reasons, Ford respectfully requests that this Court deny Plaintiff's Motion for Extension of Time and Motion to Strike. Ford further requests that this Court admit all exhibits on Ford's list of Proposed Trial Exhibits into evidence at trial of this action.

---

[1] Ford's animation is not yet complete due to the time and effort necessary to create a realistic and accurate animation of the accident sequence using all available data and evidence. Ford expects its animation to be complete and available for review by this Court on approximately May 1, 2004.

DEFENDANT
FORD MOTOR COMPANY

By its attorneys,

_____
James M. Campbell (ct 09276)
Mark J. Hoover (ct 15546)
Campbell Campbell Edwards & Conroy
Two Riverview Square
East Hartford, CT  06108
(860)291-8419

## CERTIFICATE OF SERVICE

I, Mark J. Hoover, hereby certify that a true copy of the above document was served upon the attorney for all parties by mail on March 1˜, 2004.

_____
Mark J. Hoover